UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BP WEST COAST PRODUCTS, LLC,<br><br>Plaintiff AND Counter-Defendant,<br><br>v.<br><br>CROSSROAD PETROLEUM, INC., ET AL.,<br><br>Defendants and Counter-Claimants.<br><br>AND RELATED CONSOLIDATED ACTIONS | Case No.: 12cv665 JLS (JLB)<br><br>[Consolidated with Case Nos. 12cv886 JLS (JLB), 12cv887 JLS (JLB), and 12cv888 JLS (JLB)]<br><br>**ORDER (1) DENYING WITHOUT PREJUDICE BP'S MOTIONS FOR DISPOSITIVE SANCTIONS; (2) NOTIFYING DEFENDANTS OF POSSIBILITY OF FUTURE ENTRY OF DISPOSITIVE SANCTIONS; AND (3) GRANTING IN PART AND DENYING IN PART BP'S MOTIONS FOR MONETARY SANCTIONS** |

Presently before the Court are plaintiff and counter-defendant BP West Coast Products LLC's (BP) Motion for Sanctions Against Defendants Southland Petroleum, MK Oil, and Pacific Expotech (Motion 1), (ECF No. 446); Motion for Sanctions Against Defendants Chase Products, David Parker, Parshotam Kamboj, Cal Coast, Vasaya Oil, and Sharina Alloush (Motion 2), (ECF No. 447); and Motion for Sanctions Against Schiller Defendants for Violation of Court Orders (Motion 3). (ECF No. 448.) Also before the

Court are the defendants and counter-plaintiffs' Named Guarantors/Dealer Defendants' Response to BP's Motions for Sanctions (Opposition), (ECF Nos. 464 & 465);[1] BP's Reply to Schiller Defendants' Response to BPWCP's Motions for Sanctions (Reply), (ECF No. 466); Named Guarantors/Dealer Defendants' Supplemental Response to BP's Motions for Sanctions (Supplemental Opposition), (ECF No. 474); Named Guarantors/Dealer Defendants' Amended Supplemental Response to BP's Motions for Sanctions (Amended Supplemental Opposition), (ECF No. 475); and BP's Reply to Schiller Defendants' Supplemental Response to BPWCP's Motions for Sanctions (Supplemental Reply), (ECF No. 476).

Having considered the facts and the arguments, the Court **DENIES WITHOUT PREJUDICE** BP's motions for dispositive sanctions and **GRANTS IN PART AND DENIES IN PART** BP's motions for monetary sanctions.

## BACKGROUND

### I.   BP's Motions

BP moves for sanctions against three groups of defendants based on common sets of facts. In essence, the alleged misconduct gets less severe with each motion, so that Motion 1 sets forth the most serious episodes of misconduct whereas Motion 3 details the least serious.

All three of BP's motions ask for default judgment against the Defendants, dismissal of the Defendants' counter claims, and reimbursement for BP's attorneys' fees and costs in litigating this case against these Defendants. Motion 3 seeks these remedies from all 116[2] franchisee and guarantor defendants (the Motion 3 Defendants) represented by attorney David A. Schiller, referred to by BP as the "Schiller Defendants." (*See* ECF No.

---

[1] Although Defendants filed two separate responses to BP's three motions, the two responses appear to be the same document.

[2] Throughout this case, it has not been clear exactly who Schiller's clients are, and therefore who all of the defendant/cross-plaintiffs are. For purposes of its three motions for sanctions, BP has focused on the 116 listed in Exhibit 1 attached to Motion 3. (ECF No. 448-3.) Schiller has not indicated that any Defendant on that list is not his client.

446, at 6 ("[E]ach and every Schiller Defendant is in violation of at least two court orders.").) Motion 1 and Motion 2 seek the same remedies from smaller subsets of the Motion 3 Defendants.

### A. *Motion 3*

Motion 3 seeks default judgment in BP's favor on its Fifth Amended Complaint, dismissal of the Motion 3 Defendants' Fourth Amended Counterclaims, and compensation to BP for its attorneys' fees and costs incurred litigating claims against the Motion 3 Defendants. (Mot. 3, ECF No. 448-1, at 6.) As stated above, the Motion 3 Defendants are a group of 116 franchisee and guarantor Defendants purportedly represented by attorney David Schiller. (*Id.*)

BP argues these sanctions are justified because each of the Motion 3 Defendants violated at least two and sometimes all of a series of court orders, including a May 19, 2015, order granting in part BP's motion to compel, (ECF No. 404); a May 28, 2015, order granting in part another of BP's motions to compel, (ECF No. 411); a June 2, 2015, order granting yet another of BP's motions to compel, (ECF No. 421); and a July 7, 2015, Minute Order directing the parties to meet and confer regarding the Motion 3 Defendants' non-compliance with the Court's discovery orders, (ECF No. 436).

BP does not allege that each of the 116 Motion 3 Defendants violated every order, but instead details particular shortcomings by individual Defendants,[3] (Mot. 3, ECF No. 448-1, at 6–14), and states in its Reply that "each and every Schiller Defendant is in violation of at least two court orders." (Reply, ECF No. 466, at 6.) Although the text of Motion 3 does not detail each alleged violation by each of the 116 Motion 3 Defendants, BP did attach an exhibit that lists all 116 Defendants and the orders BP alleges they violated. (Mot. 3, Ex. 9, ECF No. 448-11.)

---

[3] For example, BP points out that, with regard to one of the discovery orders, BP received "responsive documents from nine (9) of the 116 Schiller Defendants). (Motion 3, ECF No. 448-1, at 10.)

### B.  *Motion 2*

Motion 2 is directed against a subset of six of the 116 Motion 3 Defendants: Chase Products, David Parker, Parshotam Kamboj, Cal Coast, Vasaya Oil, and Sharina Alloush (the Motion 2 Defendants).  In Motion 2, BP requests the sanctions of judgment in BP's favor on its Fifth Amended Complaint, dismissal of the Motion 2 Defendants' counterclaims against BP, and compensation to BP for its attorneys' fees and costs incurred litigating claims against the Motion 2 Defendants. (Mot. 2, ECF No. 447-1, at 5.)

BP alleges the Motion 2 Defendants engaged in generally the same misconduct with regard to the discovery orders outlined in Motion 3, (*see* Mot. 2, ECF No. 447-1, at 6-8), but that each member of this group of Defendants also failed to attend depositions on one or two occasions.  (*Id.* at 9–11; *see also* Mot. 2, Ex. 14, ECF No. 447-16 (Record of Chase Products Non-Appearance); Mot. 2, Ex. 16, ECF No. 447-18 (Record of Parshotam Kamboj Non-Appearance); Mot. 2, Ex. 20, ECF No. 447-22 (Record of Vasaya Oil Non-Appearance); and Mot. 2, Ex. 22, ECF No. 447-24 (Record of Cal Coast Non-Appearance).)

### C.  *Motion 1*

Motion 1 is directed against a subset of three of the 116 Motion 3 Defendants: Southland Petroleum, MK Oil, and Pacific Expotech (the Motion 1 Defendants).  BP seeks the sanctions of default judgment against these 1 Defendants in BP's favor with regard to BP's Fifth Amended Complaint, dismissal of the Motion 1 Defendants' counterclaims against BP, and compensation to BP for its attorneys' fees and costs incurred in litigating its claims against the Motion 1 Defendants. (Mot. 1, ECF No. 446-1, at 4–5.)

In addition to the alleged violations of the Court's discovery orders, (ECF Nos. 404, 411, and 421), BP says these three Defendants failed to appear for their depositions. (Mot. 1, ECF No. 446-1, at 7–8.)  Defendants Southland Petroleum and MK Oil were scheduled to be deposed on May 6, 2015. (*Id.*)   Their attorney showed up to the deposition, but the deponents did not. (*Id.* at 8.)  Similarly, Pacific Expotech did not appear for its May 8, 2015, deposition. (*Id.*)  Magistrate Judge Burkhardt ordered the parties to meet and confer

regarding the Motion 1 Defendants' failure to attend depositions, payment of BP's costs related to the deposition, and rescheduling the deposition. (Order, ECF No. 435; Order, ECF No. 445.) Despite several efforts by BP's counsel to set a time to meet and confer with the Motion 1 Defendants' attorney, Schiller, he never made himself available to meet and confer, and the Motion 1 Defendants did not make themselves available for depositions by July 17, 2015, as Magistrate Judge Burkhardt ordered. (Mot. 1, ECF No. 446-1, at 8–11.) Magistrate Judge Burkhardt extended the July 17 deposition deadline "in the interest of justice, **not** for good cause shown," and reiterated her order for the Motion 1 Defendants to reimburse BP for their non-appearances by July 31, 2015. (Order, ECF No. 445.) BP moved for dispositive sanctions, but Magistrate Judge Burkhardt advised that "dispositive sanctions . . . should be timely raised with District Judge Janis L. Sammartino's chambers." (*Id.*)

### D. *Defendants' Opposition*

The Defendants[4] collectively filed two Oppositions that appear to be substantively identical. (*See* ECF Nos. 464 and 465.) They first asked for more time, stating that attorney Schiller did not have access to his network server and the client records stored on it, and that requiring him to respond to these motions without the server would "deprive" them "of a meaningful response." (Opp'n, ECF No. 464, at 2.) In particular, Defendants stated attorney Schiller needed access to pleadings, discovery responses, all documents produced, all supplemental discovery, and emails to "refute and or respond to BP's allegations." (*Id.* at 3.)

Defendants next objected generally to BP's motions for sanctions of default and dismissal, arguing that BP's motions do not identify with sufficient particularity the misconduct attributable to each of the Defendants identified.[5] (*Id.* at 3.)

---

[4] "Defendants" refers to the 116 Motion 3 Defendants, and does not include other defendants in this action. Defendants, including the Motion 1 and Motion 2 Defendants, submitted all responses to all three motions collectively.

[5] The Defendants give examples of two particular defendants, Southwest Petroleum and West Coast Petroleum, against whom they say BP has not identified any specific misconduct. (*Id.* at 5.) In its Reply,

Defendants went on to identify several particular Defendants, and respond to BP's motions with respect to them.

In particular, Defendants argued that BP's requested sanctions should not be issued against Sharina Alloush,[6] who is one of the six Defendants identified in Motion 2. (*Id.* at 5–6.) Sharina Alloush's name appears on the franchise agreements and she is a party to this litigation. (*Id.* at 5.) Schiller argues that her failure to appear at depositions is not important because she "is a stay at home mom . . . who was never involved in the operation of the gasoline station and knows absolutely nothing about the facts relevant to this case." (*Id.*) Rather, her husband, Baker[7] Alloush, ran the gas stations and handled all communications with BP, and Baker Alloush was deposed "and informed BP and its counsel that his wife did not know anything about the business." (*Id.*; *see also* Declaration of Sharina Alloush and Baker Alloush, ECF No. 465-2.)

The Defendants respond with regard to Pacific Expotech, operated by Abraham Kurian, which is also named as a Defendant in Motion 1, arguing that sanctions are unwarranted because Mr. Kurian's first missed deposition was a result of scheduling confusion and that he showed up for the second one, and simply was unaware that he needed to confirm it ahead of time. (*Id.* at 6.) BP Responds that the first missed deposition was not caused by simple confusion, but by Mr. Schiller's own scheduling changes. (Reply, ECF No. 466, at 8–9.) As for the second missed deposition, BP says in its motion and in a supporting declaration that Mr. Schiller had advised BP's counsel "*not* to travel for the depositions unless he advised otherwise," and that despite repeated attempts to confirm Kurian's August 6 deposition, BP never received a confirmation. (*Id.* at 9.) BP

---

BP points out that, as stated in Motion 3, both defendants violated Court Orders 404, 411, 421, and 436, among other more particular violations detailed in the supporting exhibits attached to Motion 3. (Reply, ECF No. 466, at 7.)

[6] In their briefing, Defendants spell this name "Aloush," but all other documents spell it "Alloush."

[7] Mr. Alloush's name is spelled "Baker Aloush" in the Opposition, but is spelled "Bahkir Alloush" in the declaration attached to the Opposition. At his deposition, Mr. Alloush said his name is spelled "Baker Alloush." (ECF No. 447-20.) Accordingly, the Court uses the spelling identified at Mr. Alloush's deposition.

states that it was therefore "surprise[d]" when Mr. Kurian showed up for the Pacific Expotech deposition, and made arrangements to proceed; however, Mr. Schiller was not present that day and did not respond to emails and phone calls. (*Id.*) Because Mr. Kurian's counsel was not present, BP could not proceed with the deposition. (*Id.*)

Finally, the Defendants respond in their Opposition to BP's motions with regard to Mohammed Kaskas. (Opp'n, ECF No. 464, at 6–7.) Although Defendants do not explain exactly who Kaskas is, he is one of the 116 Motion 3 Defendants and, according to BP, a guarantor for five entity Defendants, including Southland Petroleum and MK Oil, both of which are Defendants named in Motion 1. (Reply, ECF No. 466, at 10.) Defendants contend that BP had the opportunity to ask Kaskas about all five Defendant entities at two depositions, and that "BP insisted on requiring Mr. Kaskas to unnecessarily appear for multiple depositions." (Opp'n, ECF No. 464, at 6-7.) BP counters that Southland Petroleum and MK Oil were specifically ordered to produce a representative to be deposed but failed to do so, and that Kaskas "testified during his individual deposition that he does not know who Southland is and denies being a partner" with the guarantor for Southland Petroleum. (Reply, ECF No. 466, at 10.) BP states in its Reply and in a declaration that Kaskas's counsel stated on the record that Kaskas was not a proper Federal Rule of Civil Procedure 30(b)(6) deponent for Southland Petroleum and that Kaskas said he was only involved with MK Oil for six months. (*Id.*)

### E. *Defendants' Supplemental Opposition*

The Court held a hearing on these motions on September 17, 2015. Following that hearing, the Court granted the Defendants' request for additional time to file a response "in light of the seriousness of the sanctions BP seeks and Schiller's statement regarding his servers." (Order, ECF No. 469, at 2.) Defendants' Supplemental Opposition was due on October 15, 2015—more than two months after Schiller says his server crashed. (*Id.*) Defendants filed a Supplemental Opposition on October 15, 2015, and an Amended

Supplemental Opposition on October 22, 2015, without seeking leave from the Court or notifying the Defendants.[8]

By comparison to what attorney Schiller stated he would be able to show if given more time, Defendants' Supplemental Oppositions are underwhelming. Attorney Schiller was presumably able to access his server, but despite this access to pleadings, discovery responses, all documents produced, all supplemental discovery, and emails, with only a couple of exceptions, Defendants have not responded to BP's factual allegations and legal arguments with any greater degree of specificity. To the contrary, the earlier responses included greater detail about particular parties.

Attached to the Amended Supplemental Opposition is what BP aptly describes as "427 unlabeled, unidentified exhibits." (Supp'l Reply, ECF No. 476, at 3.) As BP explains, "[s]everal exhibits are comprised of two to five pages of a larger document. Others are illegible. These 427 exhibits are not explained in the Amended Supplemental Opposition, nor are they responsive to the issues before the Court." (*Id.*)

In its motions and attachments to those motions, BP identifies by name each Defendant and the particular instances of discovery misconduct that BP contends justify the sanctions it seeks. Once again, Defendants respond in a wholesale manner, stating that "BP seeks death penalty [dispositive] sanctions against all of the Dealer Defendants but fails to identify for each and every individual Defendant what alleged misconduct it attributes to each Defendant." (Supp'l Opp'n, ECF No. 474, at 2; Am. Supp'l Opp'n, ECF No. 474, at 2.) That statement patently false. Motion 1 alleges specific instances of misconduct against the three Motion 1 Defendants, (*see* Mot. 1, ECF No. 446-1, at 4–11), Motion 2 alleges specific instances of misconduct against the six Motion 2 Defendants, (*see* Mot. 2, ECF No. 447-1, at 5–13; *see also, e.g.*, Risner Decl., ¶¶ 18–19, 21, 71, 81–87,

---

[8] BP asks the Court to strike the Defendants' Amended Supplemental Opposition. The Court agrees that Defendants have had more than enough opportunities to respond to BP's motions and that the procedure followed in this filing was improper. However, having reviewed both of Defendants' supplemental filings, which are nearly the same in terms of legal argumentation, the Court does not find anything in the Amended Supplemental Opposition that changes the ultimate resolution of BP's motions at this stage.

119–121; Exs. 14, 15, 22), and Motion 3 alleges specific instances of misconduct against the 116 Motion 3 Defendants, (*see* Mot. 3, ECF No. 448-1, at 9–14; Mot. 3, Ex. 9, ECF No. 448-11). In light of BP's specificity with regard to the conduct alleged, Defendants' statement is startling, and the Supplemental Oppositions are, overall, unresponsive.

Defendants do, however, raise specific points with regard to a select few Defendants. For Defendants Southwest Petroleum and West Coast Petroleum, whom Defendants had mentioned in their earlier responses, Defendants contend that "BP was able to take the depositions of . . . representatives of both entities." (Am. Supp'l Opp'n, ECF No. 475, at 5.)

Defendants also note that Motion 3 Defendant Jerry Zomorodian was deposed and produced documents at his deposition. Although Defendants make the point that Zomorodian was eventually deposed and produced *some* documents, it does not speak directly to Zomorodian's compliance with Orders 404, 411, 421, and 436, which BP alleges this particular Defendant violated. (See Mot. 3, Ex. 9, ECF No. 448-11, at 5.)

BP levies the largest number of specific instances of discovery misconduct against the Motion 1 Defendants, Southland Petroleum, Pacific Expotech, and MK Oil. Defendants do not respond to those allegations whatsoever. As BP points out in its Supplemental Reply, "after having more than sixty days to respond, Schiller Defendants' Supplemental Opposition mentions these three Defendants only one time—in the introductory paragraph—and never mentions them again." (Supp'l Reply, ECF No. 476, at 5.) That paragraph does not address any of the substance of BP's allegations or legal argument. (*See* Supp'l Opp'n, ECF No. 474, at 2.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 37 gives courts the power to impose sanctions on parties who do not comply with discovery orders, including: (i) directing that facts be taken as established "as the prevailing party claims," (ii) prohibiting the disobedient party from introducing certain evidence or from supporting or opposing certain claims or defenses, (iii) wholly or partially striking pleadings, (iv) staying further proceedings until orders are

obeyed, (v) dismissing the action in whole or in part, (vi) entering a default judgment against the disobedient party, or (vii) treating failure to obey most kinds of orders as contempt. Fed. R. Civ. P. 37(b)(2)(A). Rule 37 also allows the court to order payment of expenses, including attorneys' fees, caused by the other party's failure. Fed. R. Civ. P. 37(b)(2)(C).

When deciding whether to impose dismissal or default, courts "must" weigh five factors:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Malone v. U.S. Postal Service*, 833 F.2d 128, 180 (9th Cir. 1987). Due process requires that courts not dismiss a case under Rule 37 when "failure to comply is due to circumstances beyond the recalcitrant's control." *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981). However, when counsel or a party acts "willfully or in bad faith" in failing to comply with the rules of discovery or court orders, or acts with flagrant disregard of those rules or orders, the Ninth Circuit has "specifically encouraged dismissal." *Id.* Willfulness or bad faith conduct is "disobedient conduct not shown to be outside the control of the litigant." *Virtual Vision, Inc. v. Praegitzer Indus., Inc.*, 124 F.3d 1140, 1143 (9th Cir. 1997) (quoting *Henry v. Gill Industries*, 983 F.2d 943, 948 (9th Cir.1993)).

In *Virtual Vision*, the bankruptcy court warned the litigant that if it did not comply with a discovery order, the court would enter default judgment. *Id.* at 1142. The litigant did not comply with the discovery order, and the bankruptcy court—as promised—entered default judgment in favor of the other party. *Id.* at 1143. The district court reversed the bankruptcy court, reasoning that the default judgment violated the litigant's due process rights. *Id.* The Ninth Circuit reversed the district court and directed that court to reinstate the bankruptcy court's default judgment, holding the litigant had the ability to comply with the discovery order, and failure to do so therefore amounted to willfulness, bad faith, or fault justifying default. *Id.* at 1145.

Similarly, in *Sigliano* the plaintiff failed to respond to interrogatories. 642 F.2d at 309–10. The defendants filed a motion to compel, and before that motion was ruled on, filed a motion to dismiss under Rule 37. *Id.* at 310. The plaintiff requested more time to respond to the interrogatories and indicated generally that he opposed the motion to dismiss. *Id.* On the morning of a hearing on the motion to dismiss, the plaintiff requested a continuance. *Id.* The court held the hearing that day, but the plaintiff did not appear. *Id.* The court continued the hearing to two weeks later, gave the plaintiff another four days to respond to the motion to dismiss, and indicated that if no response was timely filed the case would be dismissed under Rule 37. *Id.* The plaintiff did not file a timely response, and the district court dismissed the action. *Id.* The Ninth Circuit affirmed the dismissal despite the plaintiff's argument that dismissal was improper because the court never issued an order compelling discovery. *Id.* In affirming the district court, the Ninth Circuit reemphasized that dismissal is encouraged when litigants repeatedly fail to comply with discovery requests. *See id.*

## ANALYSIS

**I.     Motion 1**

Because BP accuses the three Motion 1 Defendants of the most extensive discovery misconduct of the three groups, the case for dispositive sanctions against them is the strongest.

The first two factors—public interest in expeditious resolution of litigation and the Court's need to manage its docket—weigh strongly in favor of dismissal. This case has been pending for nearly four years. The Motion 1 Defendants' refusal to comply with discovery orders and failure to attend depositions has repeatedly prevented this action from moving forward. After all this time, BP has not been able, despite repeated attempts, to conduct meaningful fact discovery with regard to the Motion 1 Defendants.

The third factor, the risk of prejudice, also weighs in favor of dismissal and default. BP has tried repeatedly to conduct discovery in this case, but the delays have cost BP much time and money. All the while, the evidence that would provide the foundation of this case

grows more and more stale. The Ninth Circuit in *Malone* described prejudice as the impairment of "the defendant's ability to go to trial" or interference "with the rightful decision of the case." 833 F.2d at 131. The Motion 1 Defendants' conduct has thus far significantly impaired BP's ability to go to trial or file dispositive motions. Therefore, the Motion 1 Defendants' conduct has prejudiced BP, weighing in favor of default and dismissal.

The fourth factor, the public policy favoring disposition of cases on their merits, weighs against BP. But by its nature, this factor as phrased will always weigh against dismissal or default. In *Malone*, the court clarified that when the other factors weigh in favor of dismissal, the "merits" factor does not "outweigh the other four factors." *Malone*, 833 F.2d at 133 n.2. In any event, the Motion 1 Defendants' conduct in this case gives the impression that these Defendants may never cooperate sufficiently to allow discovery of facts that could lead to a decision on the merits. Thus, although decisions on the merits are favored, this factor would not on its own outweigh the other four if they tilted in favor of default and dismissal.

Finally, the fifth factor, the availability of less drastic alternatives, in this case augers against BP. The *Malone* court added a sub-factor test for the "less drastic alternatives" factor,[9] noting that, when reviewing district courts' issuance of dispositive sanctions, the court of appeals will examine whether the district court (1) "explicitly discuss[ed] the feasibility of less drastic sanctions and explain[ed] why alternative sanctions would be inadequate," (2) implemented other less drastic sanctions before ordering dismissal, or (3) warned the plaintiff of the possibility of dismissal before actually ordering dismissal. *Malone*, 833 F.2d at 132.

Magistrate Judge Burkhardt issued several discovery orders—few of which were heeded by these Defendants—and already imposed monetary sanctions. Nonetheless, the Motion 1 Defendants "continued to directly violate Court orders regarding deposition

---

[9] The Court recognizes that this is getting to be a lot of factors.

appearances and payment of monetary sanctions." (Mot. 1, ECF No. 446-1, at 14.) The Motion 1 Defendants also had notice from Magistrate Judge Burkhardt that they may stand to answer on motions for dispositive sanctions, including default judgment. (Order, ECF No. 445, at 8.)

To date, monetary sanctions have not been effective. Rule 37 also gives the option to direct that facts be taken as established. In this case, that sort of sanction would probably either lead to further delay, or, depending on the extent of the fact-dispositive sanction, effectively end the case. Additionally, BP has not proposed these sanctions or indicated what facts should be taken as established.

There is no doubt that, like the litigant in *Virtual Vision*, the Motion 1 Defendants had the ability to attend their depositions and comply with the Court's discovery orders. Their failure to do so, therefore, amounts to the sort of willfulness and bad faith for which the Ninth Circuit has encouraged the sanction of default or dismissal under Rule 37. *Sigliano*, 642 F.2d at 310. Nonetheless, with regard to dispositive sanctions, the Court is inclined to give the Motion 1 Defendants one last chance.

First, although Magistrate Judge Burkhardt in her July 24, 2015, Order indicated that motions for dispositive sanctions should be raised with this Court, and therefore gave the Motion 1 Defendants some notice of the possibility of dispositive sanctions, that notice is less explicit and directive than that provided to the litigants in *Sigliano* and *Virtual Vision*. In both of those cases, the court that would ultimately rule on the motion for dispositive sanctions gave the litigants notice that failure to participate in discovery or comply with orders would result in entry of dismissal or default. *See Virtual Vision*, 124 F.3d at 1142; *Sigliano*, 642 F.2d at 309–10; *but see Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1056–57 (9th Cir. 1998) ("[E]veryone has notice from the text of Rule 37(b)(2) that dismissal is a possible sanction for failure to obey discovery orders."). The notice here was less explicit. Although Magistrate Judge Burkhardt provided the Motion 1 Defendants some notice, this Court has not explicitly warned these Defendants that failure to comply will result in default and dismissal. However, the Court hereby **GIVES NOTICE** to the

Motion 1 Defendants that further failure to comply with discovery orders or to meaningfully participate in discovery, even absent an order to compel, **SHALL** result in entry of default judgment against them and dismissal of their counterclaims pursuant to Rule 37(b).

Second, the severity of the remedy BP seeks for these discovery violations weighs in favor of giving the Motion 1 Defendants another chance before ending the case against them. It seems more severe to enter a default judgment against a defendant and to grant dismissal of counter claims, as would be the case here, than it does to dismiss a plaintiff's case where the plaintiff—who initiated the action in the first place—is not participating appropriately in the action. *See, e.g.*, *Sigliano*, 642 F.2d at 309–10.

Third, although the Court does not now grant the full extent of relief BP seeks, the conduct complained of is not going unpunished. The Court is not confident that monetary sanctions will be effective here, or that they will ultimately be paid, but that remains to be seen. BP requests an award of its attorneys' fees and costs "incurred in litigating claims against" the Motion 1 Defendants. (Mot. 1, ECF No. 446-1, at 17.) The Court is inclined to grant somewhat narrower relief. BP is entitled to be reimbursed by the Motion 1 Defendants—that is, Southland Petroleum, MK Oil, and Pacific Expotech—for fees and costs attributable to the discovery violations BP identifies and in litigating this Motion, but not for litigation of all claims against them.

Accordingly, the Court **DENIES WITHOUT PREJUDICE** BP's motion for dispositive sanctions against the Motion 1 Defendants and **GRANTS IN PART AND DENIES IN PART** BP's motion for monetary sanctions pursuant to Rule 37(b)(2)(C). Southland Petroleum, MK Oil, and Pacific Expotech **SHALL** reimburse BP for reasonable attorneys' fees and costs associated with litigating Motion 1 and the Motion 1 Defendants' missed depositions and noncompliance with discovery orders. BP **SHALL FILE** invoices and supporting affidavits detailing time spent and costs incurred litigating Motion 1, for which the Motion 1 Defendants shall be jointly and severally liable, as well as invoices and supporting affidavits for expenses associated with the Motion 1 Defendants' discovery

misconduct. With regard to discovery misconduct, each Motion 1 Defendant is liable to BP only for the attorneys' fees and costs associated with its own conduct. BP should, therefore, identify with particularity the fees and costs attributable to each Defendant for discovery matters.

## II. Motion 2

As with the Motion 1 Defendants, the first two factors weigh against the Motion 2 Defendants. As BP points out, the Motion 2 Defendants violated the case management order, the federal rules regarding depositions, discovery orders, and orders to meet and confer regarding non-appearances and discovery failures. This conduct significantly impedes the public interest in expeditious resolution of litigation and the Court's docket management.

Likewise, the prejudice factor favors BP, because the Motion 2 Defendants' conduct has hampered BP's ability to go to trial or move toward a decision in this case. BP cannot prosecute and defend its claims without adequate written discovery and opportunities to depose these six Defendants. The Motion 2 Defendants' conduct has also prejudiced BP by increasing the time and cost associated with this litigation.

Again, the factor favoring resolution on the merits weighs against dispositive sanctions, but as before, it should not overshadow the other four factors where they otherwise weigh in favor of case-dispositive sanctions.

Finally, as with the Motion 1 Defendants, the less drastic alternatives factor tilts against granting dispositive sanctions at this point. However, the Court hereby **GIVES NOTICE** to the Motion 2 Defendants that further failure to comply with discovery orders or to meaningfully participate in discovery, even absent an order to compel, **SHALL** result in entry of default judgment against them and dismissal of their counterclaims pursuant to Rule 37(b). Further, BP is entitled to reimbursement by the Motion 2 Defendants—that is, Chase Products, David Parker, Parshotam Kamboj, Cal Coast, Vasaya Oil, and Sharina Alloush—for fees and costs attributable to litigating Motion 2 and the discovery violations BP identifies.

Accordingly, the Court **DENIES WITHOUT PREJUDICE** BP's motion for dispositive sanctions against the Motion 2 Defendants and **GRANTS IN PART AND DENIES IN PART** BP's motion for monetary sanctions pursuant to Rule 37(b)(2)(C). Chase Products, David Parker, Parshotam Kamboj, Cal Coast, Vasaya Oil, and Sharina Alloush **SHALL** reimburse BP for reasonable attorneys' fees and costs associated with litigating Motion 2 and the Motion 2 Defendants' missed depositions and other instances of noncompliance with discovery orders. BP **SHALL FILE** invoices and supporting affidavits detailing time spent and costs incurred litigating Motion 2, for which the Motion 2 Defendants shall be jointly and severally liable, as well as invoices and supporting affidavits for expenses associated with the Motion 2 Defendants' discovery misconduct. With regard to discovery misconduct, each Motion 2 Defendant is liable to BP only for the attorneys' fees and costs associated with its own conduct. BP should, therefore, identify with particularity the fees and costs attributable to each Defendant for discovery matters.

### III.  Motion 3

BP in Motion 3 seeks default, dismissal, and monetary sanctions against all 116 Defendants believed to be represented by attorney David Schiller. Although these Defendants have not been very cooperative in the discovery process, it would be an overly severe sanction to impose default and dismissal against all 116 because each has violated—to varying degrees—at least two discovery orders.

The Defendants' misconduct here, taken as a whole, is not as flagrant as in the other two motions, and is probably attributable largely to their attorney's lack of organization in this case. Of course, an attorney's sub-par performance does not give litigants a free pass, but in the interest of justice, considering all of the circumstances, dispositive sanctions against all 116 Motion 3 Defendants is simply too drastic. Nonetheless, future failure to comply with discovery obligations and orders may warrant entry of dispositive sanctions. The Court hereby **GIVES NOTICE** to the Motion 3 Defendants that further failure to comply with discovery orders or to meaningfully participate in discovery, even absent an

order to compel, may result in entry of default judgment against them and dismissal of their counterclaims pursuant to Rule 37(b).

The Motion 3 Defendants do not escape all responsibility, however, and should be required to compensate BP for its reasonable fees and costs associated with litigating Motion 3.

Accordingly, the Court **DENIES WITHOUT PREJUDICE** BP's motion for dispositive sanctions against the Motion 3 Defendants and **GRANTS IN PART AND DENIES IN PART** BP's motion for monetary sanctions pursuant to Rule 37(b)(2)(C). The Motion 3 Defendants **SHALL** reimburse BP for reasonable attorneys' fees and costs associated with litigating Motion 3. BP **SHALL FILE** invoices and supporting affidavits detailing time spent and costs incurred litigating Motion 3, for which the Motion 3 Defendants shall be jointly and severally liable. Some of the Motion 3 Defendants are the subjects of Motion 1 and Motion 2. Those Defendants' liability for monetary sanctions with respect to those motions is independent of and in addition to their liability with respect to Motion 3.

## CONCLUSION

For the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** all of BP's motions for dispositive sanctions and **GRANTS IN PART AND DENIES IN PART** all of BP's motions for monetary sanctions. Specifically:

1. The Defendants who are the subject of Motion 1, (ECF No. 446), **SHALL** reimburse BP for reasonable attorneys' fees and costs associated with litigating Motion 1 and the Motion 1 Defendants' missed depositions and noncompliance with discovery orders. The Motion 1 Defendants are jointly and severally liable for the fees and costs of litigating Motion 1 and individually liable for the fees and costs attributable to their discovery misconduct.

2. The Defendants who are the subject of Motion 2, (ECF No. 447), **SHALL** reimburse BP for reasonable attorneys' fees and costs associated with

litigating Motion 2 and the Motion 2 Defendants' missed depositions and noncompliance with discovery orders.  The Motion 2 Defendants are jointly and severally liable for the fees and costs of litigating Motion 2 and individually liable for the fees and costs attributable to their discovery misconduct.

3. The Defendants who are the subject of Motion 3, (ECF No. 448) **SHALL** reimburse BP for reasonable attorneys' fees and costs associated with litigating Motion 3.  The Motion 3 Defendants are jointly and severally liable for the fees and costs of litigating Motion 3.

4. BP **SHALL** submit supporting documentation, including invoices and affidavits, regarding the specific amounts owed pursuant to the sanctions ordered herein <u>on or before January 15, 2016</u>.  Defendants **SHALL FILE** their objections, if any, to BP's invoices and affidavits <u>on or before January 29, 2015</u>.

**IT IS SO ORDERED.**

Dated:  December 14, 2015

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge