# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BP WEST COAST PRODUCTS, LLC,<br><br>    Plaintiff and Counter-Defendant,<br><br>v.<br><br>CROSSROAD PETROLEUM, INC., ET AL.,<br><br>    Defendants and Counter-Claimants. | Case No.: 12-CV-665 JLS (JLB) Lead Case<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 685) |
| AND RELATED CONSOLIDATED ACTIONS | |

Presently before the Court is Plaintiff and Counter-Defendant BP West Coast Products ("BP")'s Motion for Partial Summary Judgment on its Fuel Claims, ("MSJ," ECF No. 685). In Response to the MSJ was filed a Declaration by Pamela G. Lacey in Support of Opposition to Motion to Dismiss and Motion for Summary Judgment, ("Lacey Decl.," ECF No. 692). BP then filed a Reply, ("Reply," ECF No. 697). BP's Motion for Summary Judgment requests the Court grant relief as to:

(1) BP's Third Claim for Relief in its Fifth Amended and Consolidated Complaint against Defendants Khaja Ansari, NP Petroleum Corp., Sharina Alloush, Daisie Enterprises, Inc., and Hadaf Inc. ("Dealer Defendants") for damages resulting from Breach of Franchise Agreements for the failure to pay for motor fuel;

(2) BP's Fifth Claim for Relief as to guarantor defendants Khaja Ansari, Fazilath Ansari, Nader Sahih, Payam Sahih, Rajesh Arora, Anup Patel, Tarun Maitra, and Soma Prasad ("Guarantor Defendants") for Breach of Franchise Guarantees for the failure to pay the amounts owed for motor fuel.[1]

(MSJ 2; *see* "Fifth Am. Compl.," ECF No. 296-3.)

## BACKGROUND

The Dealer Defendants operated gas stations under franchise agreements with BP on sites they leased from BP, and the Guarantor Defendants backed these lease and franchise agreements. (MSJ 2.) BP alleges it sold and delivered motor fuel to the Dealer Defendants for them to resell at their respective subleased stations. (*Id.*) BP alleges, pursuant to the terms of the Parties' contracts, the Dealer Defendants were required to pay BP for the fuel. BP alleges it delivered fuel to the Dealer Defendants, but these Defendants defaulted on payments for motor fuel. (*Id.*) BP also alleges the Guarantor Defendants failed to pay BP amounts owed for motor fuel, which they personally guaranteed, thus breaching their guaranty agreements. (*Id.* at 3.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is

---

[1] After BP filed its Motion for Summary Judgment, the Court adopted Judge Burkhardt's Report and Recommendation recommending the Court issue terminating sanctions against five Defendants in this matter. (ECF No. 699.) As relevant here, the Court entered judgment against Defendants Rajesh Arora and Nader Sahih and dismissed with prejudice any counterclaims asserted by these Defendants. (*Id.*) Thus, the Court does not analyze BP's claims against these two Defendants here. For clarity's sake, the Court matches the two sets of the remaining Defendants addressed in the present MSJ as follows:
Khaja Ansari: guarantor for Khaja Ansari;
Fazilath Ansari: guarantor for Khaja Ansari;
Payam Sahih: guarantor for NP Petroleum Corp.;
Anup Patel: guarantor for Daisie Enterprises, Inc.;
Tarun Maitra: guarantor for Hadaf, Inc.;
Soma Prasad: guarantor for Hadaf, Inc.
(*See* Fifth Am. Compl. ¶¶ 38, 40, 58, 64.) Dealer Defendant Sharina Alloush does not appear to have a guarantor.

appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a party seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-

moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.[2]

## ANALYSIS

BP alleges this issue is straightforward: the Dealer Defendants agreed to pay for the motor fuel, they received the motor fuel, they were notified of their obligation to pay, but neither they nor the Guarantor Defendants paid. In her Declaration, Ms. Lacey states that at the mediation on October 18–19, 2016, it was made apparent that there are "differences as to the amount of the verified claims being made between BP and Defendants Daisie and Barbat." (Lacey Decl. ¶ 4.) Ms. Lacey also declares BP is not cooperating with "good faith and fair dealing implicit in every contract" because there were documents produced to demonstrate BP's figures may have been wrong as to defendants Daisie and Barbat. (*Id.* ¶ 5.) Ms. Lacey also declares BP owes the Shomers Group close to $75,000 so dismissal is not proper. (*Id.*)[3] Ms. Lacey also requests another mediation, and asserts that the affirmative defenses of estoppel and unclean hands asserted in Defendants' answer are applicable here. (*Id.*)

BP is correct in its assertion that the Lacey Declaration does not address the majority of the Dealer Defendants and Guarantor Defendants listed in BP's Motion for Summary Judgment. BP requests summary judgment be entered against five Defendants and eight Guarantor Defendants, (MSJ 2), and, of these, the Lacey Declaration only discusses Defendant Daisie. A court cannot grant a motion for summary judgment based on the

---

[2] The Court applies California law to determine whether or not there is a triable issue of fact regarding BP's claims. *See In re Cochise Coll. Park*, 703 F.2d 1339, 1348 n.4 (9th Cir. 1983) ("[T]he question of the legal consequences of one party's failure to perform its remaining obligations under a contract is an issue of state contract law.").

[3] It appears Ms. Lacey's declaration is addressing two separate motions filed by BP: first, BP's Motion for Voluntary Dismissal, (ECF No. 686), and second, BP's Motion for Summary Judgment, (ECF No. 685). The Court ordered any response to BP's Motion for Voluntary Dismissal to be filed on or before October 23, 2017. (*See* ECF No. 689.) When no opposition to the motion was filed, the Court granted the motion on October 25, 2017. (ECF No. 691.) Ms. Lacey filed her Declaration, opposing both motions, on November 7, 2017. (ECF No. 692.) Therefore, this seems to explain why Ms. Lacey references Defendants Barbat and the Shomers Group in her Declaration. Neither of these Defendants are mentioned in BP's MSJ, and the Court has granted BP's motion to dismiss these Defendants. (*See* ECF No. 691.)

nonmoving party's failure to oppose the motion.  A court may grant summary judgment only where the moving party demonstrates that, in light of the undisputed facts in the record, it is entitled to judgment as a matter of law.  *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258 (9th Cir. 2010) ("Ninth Circuit precedent bars district courts from granting summary judgment simply because a party fails to file an opposition or violates a local rule, and [district courts must] analyze the record to determine whether any disputed material fact [i]s present.").  Thus, the Court analyzes BP's Motion on the merits.

## I. BP's Breach of Franchise Agreements Claim

BP seeks summary judgment of its third claim for relief, Breach of Franchise Agreements.  (MSJ 2; *see also* Fifth Am. Compl.)  To prevail on a claim for breach of contract, BP must establish (1) the existence of a valid contract, (2) BP's performance or excuse for nonperformance, (3) Defendants' breach, and (4) resulting damages.  *See Reichert v. Gen. Ins. Co.*, 442 P.2d 377, 381 (Cal. 1968).

### *A. The Contracts (i.e., Franchise Agreements)*

The first issue is whether there is a valid contract for the payment of motor fuel.  To establish the existence of a valid contract the plaintiff must allege: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration.  *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550).

BP provided copies of all five of the Dealer Defendant's franchise agreement with BP.  (*See* ECF Nos. 685-46 to 685-50 (BP's Request for Admissions to the five Dealer Defendants).)[4]  On each of these Request for Admissions, Request No. 1 asks the Defendant to "[a]dmit that Exhibit A attached hereto is a true and correct copy of the FRANCHISE AGREEMENT that YOU executed."  Magistrate Judge Burkhardt deemed

---

[4] ECF No. 685-46 is BP's Request for Admissions to Khaja Ansari.  ECF No. 685-47 is BP's Request for Admissions to NP Petroleum Corp.  ECF No. 685-48 is BP's Request for Admissions to Sharina Alloush.  ECF No. 685-49 is BP's Request for Admissions to Daisie Enterprises, Inc.  ECF No. 685-60 is BP's Request for Admissions to Hadaf Inc.

these Requests admitted by various Defendants as the Defendants' responses were untimely and failed to satisfy Federal Rule of Civil Procedure 36. (*See* ECF No. 412; *see also* ECF No. 414 (listing the defendants to which that ECF No. 412 applies). The five Dealer Defendants appear on the ECF No. 414 list. Thus, the Dealer Defendants are deemed to have admitted that they executed the franchise agreements attached to their respective Requests for Admission. *See Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) ("Unanswered requests for admissions may be relied on as the basis for granting summary judgment." (citing *O'Campo v. Hardisty,* 262 F.2d 621, 624 (9th Cir. 1958)).) Thus, the Court finds there is no dispute of material fact that the Dealer Defendants consented to the contracts.[5]

Turning to the element of lawful object, a provision in each of the five franchise agreements states: "Franchisee shall pay for ARCO Branded Motor Fuels sold and delivered to Franchisee hereunder at the prices established for such Motor Fuels from time to time by BPWCP." (*See, e.g.*, ECF No. 685-46 ¶ 3.e.) "Unless BPWCP extends credit to Franchisee . . . Franchisee will pay for ARCO Branded Motor Fuels prior to its delivery in U.S. dollars. BPWCP shall require a product advance payment approximately equal to the current cost of an average delivery of Branded Motor Fuel." (*Id.* ¶ 3.f.) "Franchisee agrees to accept and pay for such Branded Motor Fuels as are delivered to the Premises." (*Id.* at ¶ 5.b.) The Court finds the Agreements involve a lawful object as they are contracts for the franchise of fuel station and for motor fuel. Finally, the Court finds sufficient consideration, as both parties benefitted from the franchise agreement; BP received money and the Defendants received motor fuel. "A contract is supported by sufficient consideration if there is some benefit to the promisor or detriment to the promisee." *VasoNova Inc. v. Grunwald*, No. C 12-02422 WHA, 2012 WL 6161041, at *5 (N.D. Cal. Dec. 11, 2012) (quoting *Sandrini v. Branch*, 32 Cal. App. 2d 707, 709 (Ct. App. 1939)).

---

[5] Further, as to the element of capability: "[a]ll persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights." Cal. Civ. Code § 1556. The Dealer Defendants are franchise owners and there is no dispute of material fact they are capable of contracting.

In sum, there is no dispute of material fact as to the existence of a valid contract between BP and the Dealer Defendants.

### B. *BP's Performance of Excuse of Non-Performance, and Defendants' Breach*

In its Statement of Facts, BP alleges it delivered motor fuel to each of the Dealer Defendants' stations. For example, as to Defendant Ansari, BP alleges it delivered motor fuel to Defendant Ansari on five occasions the week of April 19, 2012. ("SoF," ECF No. 685-2, ¶¶ 16–20.) BP alleges it then attempted to draw funds from Ansari's account, but the fund transfers failed, and BP then put Ansari on COD (meaning any future motor fuel payments by Ansari would need to be made at the time of delivery). (SoF ¶¶ 15, 22.) BP alleges similar situations for the other four Defendants; BP alleges it delivered fuel to the Defendant's site(s), attempted to draw funds from the Defendant's account, the fund transfer(s) failed, and BP placed the Defendant on COD. (SoF ¶¶ 25–30 (NP Petroleum); ¶¶ 31–46 (Alloush); ¶¶ 47–51 (Daisie); ¶¶ 52–54 (Hadaf).)[6]

As noted above, the Dealer Defendants have not opposed BP's allegations that they entered into a franchise agreement, BP performed by delivering fuel, and the Dealer Defendants' failed to pay for the fuel. (*See generally* Lacey Decl. (not addressing the Parties' performance or actions).) A court may "grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support their motion and do not on their face reveal a genuine issue of material fact." *Van Mathis v. Safeway Grocery*, No. C 09-2026 WHA (PR), 2010 WL 3636213, at *1 (N.D. Cal. Sept. 14, 2010) (citing *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 2029 (9th Cir. 2001)).

Here, the Court finds BP's papers sufficient on their face to support a finding of BP's performance and the Dealer Defendants' breach. BP has submitted evidence of bills of landing (confirming delivery) and corresponding invoices for each fuel delivery to each of the Dealer Defendants. (ECF Nos. 685-4 to 685-13 (Ansari); ECF Nos. 685-15, 685-16,

---

[6] BP's allegations as to Defendant Hadaf differ slightly: Hadaf was placed on COD payment terms in early 2012, but BP delivered fuel to Hadaf in May 2012 "for purposes of testing the fuel tanks" and alleges it has not been paid to date. (SoF ¶ 52–54.)

685-19, & 685-20 (NP Petroleum); ECF Nos. 685-24 to 685-36 (Alloush); ECF Nos. 685-38, 685-39 (Daisie); ECF Nos. 685-43, 685-44 (Hadaf).) These bills and invoices were authenticated by BP's Financial Analyst, Allison Swinson, who was previously BP's Credit & Retail Manager. (*See generally* "Swinson Decl.," ECF No. 685-3.) Ms. Swinson has also declared none of the five Dealer Defendants have paid BP for the fuel delivery. (*Id.* ¶¶ 25, 34, 43, 59, 62, 67.) There is no controverting evidence. The Court finds these elements are met.

### C. Resulting Damages to BP

BP alleges it has not been paid a total of $166,971.81 for motor fuel delivered to Defendant Ansari, (SoF ¶ 24), a total of $71,574.81 for motor fuel delivered to Defendant NP Petroleum, (SoF ¶ 30), a total of $136,562.23 for motor fuel delivered to Defendant Alloush, (SoF ¶ 46), a total of $35,261.96 for motor fuel delivered to Defendant Daisie, (SoF ¶ 51), and a total of $34,398.71 for motor fuel delivered to Defendant Hadaf. (SoF ¶ 24). But BP also notes these Defendants have credits and deposits "that BPWCP will offset against any judgment in its favor." (MSJ 7 n.2.)

Under the franchise agreement, "[u]nless BPWCP extends credit to Franchisee as provided below, Franchisee will pay for ARCO Branded Motor Fuels prior to its delivery in U.S. dollars." (*See, e.g.*, ECF No. 685-46, ¶3.e.) BP has alleged all five Dealer Defendants owe BP for motor fuel, subject to credits. As to Defendants Ansari, NP Petroleum, Alloush, and Hadaf, there is no evidence controverting BP's evidence of damages. BP has produced evidence in the form of invoices authenticated by BP's Financial Analyst, detailing its damages. Thus, the Court finds BP has proven the element of damages as to these four Dealer Defendants.

As to Defendant Daisie, Ms. Lacey does contest BP's damages amount in her declaration. She alleges "[w]ithout breaching the confidentiality of the proceedings, suffice it to say that documents were produced to demonstrate BP's figures may have been wrong" and their records represent "a $35,000 difference to Daisie Enterprises, which BP

paid off in August 2012, yet now seeks that amount from Daisie." (Lacey Decl. ¶ 5.)[7] This assertion is unclear. It also appears to contend that Ms. Lacey is in possession of evidence that contradict BP's damages figures—but these documents are not attached to the declaration nor specifically referred to. When considering a motion for summary judgment, a court may not weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But, "[t]he district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen*, 237 F.3d at 1030. Therefore, the Court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal citation omitted).

It seems that Ms. Lacey is indeed asking the Court to "scour the record" searching for documents that will contradict BP's damages figure as to Defendant Daisie. Vaguely referring to "documents produced" in this matter (a case that has been accruing documents since 2012), without more, is insufficient to show a genuine issue of material fact. As here, where the moving party, BP, has shown an absence of a genuine issue of material fact, a

---

[7] To the extent Ms. Lacey's declaration is couched as a request for the Court to defer consideration of the MSJ under Rule 56(d), the Court evaluates it as such. "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). And "[a]lthough [Rule 56(d)] facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'" *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (quoting *Anderson*, 477 U.S. at 250 n.5). Here, it does not appear Ms. Lacey is stating that discovery would better allow the Defendants to file a response to the MSJ. Instead, she states documents were produced and BP has not responded to the documents or "negotiated further." (Lacey Decl. ¶ 5.) There is no indication Defendants have not had an adequate opportunity to discover information or collect evidence, nor that there is any discovery that exists that would preclude summary judgment. Thus, the Court does not defer its ruling on this MSJ pursuant to Rule 56(d). *See Getz v. Boeing Co.*, 654 F.3d 852, 867–68 (9th Cir. 2011) (explaining that a plaintiff must show that the discovery sought would have precluded summary judgment in order to be granted additional discovery).

nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586. Therefore, the Court finds BP has met this element as to Defendant Daisie's damages; Ms. Lacey's unclear declaration referring to the existence some document does not show an issue of material fact.

### D. Conclusion

In sum, there is no dispute of material fact that BP and the Dealer Defendants entered into a contract, BP performed, the Dealer Defendants failed to perform, and BP was damaged as a result. Thus, the Court **GRANTS** BP's Third Claim for Relief in its Fifth Amended and Consolidated Complaint against the Dealer Defendants: Khaja Ansari, NP Petroleum Corp., Sharina Alloush, Daisie Enterprises, Inc., and Hadaf Inc., for damages resulting from breach of franchise agreements for the failure to pay for motor fuel.

## II. BP's Breach of Franchise Guaranties Claim

BP seeks summary judgment of its fifth claim for relief, Breach of Franchise Guaranties. (MSJ 2; *see also* Fifth Am. Compl.)

"A guarantor makes a direct promise to perform the principal's obligation in the event the principal fails to perform." *United States ex rel. Hajoca Corp. v. Aeroplate Corp.*, No. 12-cv-1287-AWI-BAM, 2013 WL 3729692, at *5 (E.D. Cal. July 12, 2013). To meet its burden on this Motion for Summary Judgment, BP must show the following: "1) there is a valid guaranty, 2) the borrower has defaulted, and 3) the guarantor failed to perform under the guaranty." *Grayl CPB, LLC v. Kolokotronis*, 202 Cal. App. 4th 480, 486 (Ct. App. 2011) (citing *Torrey Pines Bank v. Superior Court*, 216 Cal. App. 3d 813, 819 (Ct. App. 1989)).

### A. Valid Guaranty

The first issue is the existence of a valid guaranty for each of the Guaranty Defendants. To assist in the determination of the validity of these agreements, the Court requested supplemental briefing from the Parties because neither Party addressed the issue

in their summary judgment briefs. Both Parties filed supplemental briefs on the issue. (*See* "BP Supp. Brief," ECF No. 700; "Def. Supp. Brief," ECF No. 701.)[8]

As was the case with the Dealer Defendants, BP submitted a Request for Admission to each Guaranty Defendant requesting they admit the attached documents are "true and correct copies of the FRANCHISE GUARANTIES that YOU executed in favor of BPWCP with regard to the FRANCHISE AGREEMENT." (*See, e.g.*, ECF No. 685-53, at 4 (RFA for Defendant Payam Sahih). Magistrate Judge Burkhardt deemed these Requests admitted as the responses were untimely and failed to satisfy Federal Rule of Civil Procedure 36. (*See* ECF No. 412; *see also* ECF No. 414 (listing the defendants to which that ECF No. 412 applies).) The eight Guaranty Defendants appear on the ECF No. 414 list.

Thus, the Guaranty Defendants are deemed to have admitted that they executed the guaranty agreement attached to their respective Request for Admission. *See Conlon,* 474 F.3d at 621 ("Unanswered requests for admissions may be relied on as the basis for granting summary judgment." (citing *O'Campo,* 262 F.2d at 624)). But, the Court must also assess the validity of these agreements.

*1. Legal Standard*

A guaranty obligation must be in writing and signed by the guarantor. Cal. Civ. Code § 2793. Generally, a valid contract requires mutual consent of the parties and consideration. *See* Cal. Civ. Code §§ 1550, 1565. For purposes of the guaranty, "consideration for a contract is equally valuable whether it move[s] to the other party or a third party. Consideration does not have to move to the promisor." *City of Los Angeles v. Anchor Cas. Co.*, 204 Cal. App. 2d 175, 181–82 (Ct. App. 1962) (citations omitted). "Where a suretyship obligation is entered into at the same time with the original obligation, or with the acceptance of the latter by the creditor, and forms with that obligation a part of

---

[8] Defendants' supplemental brief discusses issues beyond what was requested. (*See* Def. Supp. Brief 4–6 (discussing issues as to the Dealer Defendants).) Out of fairness to both Parties, the Court only considers the arguments on the specific issue requested.

the consideration to him, no other consideration need exist. In all other cases there must be a consideration distinct from that of the original obligation." Cal. Civ. Code § 2792.

### 2. *The Sham Guaranty Defense*

In their supplemental briefing, Defendants argue the guaranties are "sham guaranties" and thus illusory. (Def. Supp. Brief 2.) Under California law, "[a] surety or guarantor is one who promises to answer for the debt, default, or miscarriage <u>of another</u>, or hypothecates property as security therefor." Cal. Civ. Code § 2787 (emphasis added). Therefore, "to collect a deficiency from a guarantor, he must be a true guarantor and not merely the principal debtor under a different name." *Cadle Co II v. Harvey*, 83 Cal. App. 4th 927, 932 (Ct. App. 2000). "It is well established that where a principal obligor purports to take on additional liability as a guarantor, nothing is added to the primary obligation." *Torrey Pines*, 231 Cal. App. 3d at 319–20. If this is the case, the guaranty must be considered ineffective. *Id.* at 320; *see also Asmus v. Pac. Bell*, 23 Cal.4th 1, 32 (Ct. App. 2000) ("Doing or promising to do what one already is legally bound to do cannot be consideration for a promise."). "It is a factual question whether a person is a true guarantor or a principal obligor in guarantor's guise." *River Bank Am. v. Diller*, 38 Cal. App. 4th 1400, 1422 (Ct. App. 1995).

In determining whether a guaranty is a sham, the court must examine whether the guarantor is actually the principal obligor, which occurs when "(1) the guarantor personally executes underlying loan agreements or a deed of trust or (2) the guarantor is, in reality, the principal obligor under a different name by operation of trust or corporate law or some other applicable legal principle." *CADC/RAD Venture 2011-1 LLC v. Bradley*, 235 Cal. App. 4th 775, 786–87 (Ct. App. 2015). When there is "adequate legal separation between the borrower and the guarantor, e.g., through the appropriate use of the corporate form," the sham guaranty defense generally will not apply. *Id.* at 787.

#### a. Guarantor Defendant Khaja Ansari

In its Fifth Amended Complaint, BP claims both Khaja Ansari and Fazilath Ansari "executed a Franchise Agreement Guaranty thereby personally guaranteeing the

12

obligations with respect to Khaja Ansari's Franchise Agreement with BPWCP." (Fifth Am. Compl. ¶ 38.) ECF No. 685-46 (Ex. E, 57–62) is an "Unconditional Guaranty" executed by Defendant Khaja Ansari, guarantying the debt of himself. (*See also* ECF No. 685-46 (Ex. A, 8–43) (the franchise agreement executed by Defendant Khaja Ansari).) BP has provided no information as to why the guaranty executed by Khaja Ansari is effective, despite the fact that Defendant Khaja Ansari is guaranteeing his <u>own</u> franchise agreement. Thus, BP has not shown an absence of material fact as to the validity of this guaranty agreement. The Court **DENIES** BP's claim for relief as Guarantor Defendant Khaja Ansari.

b. Guarantor Defendant Tarun Maitra

Both Soma Prasad and Tarun Maitra executed agreements guaranteeing the debt of Hadaf Inc. On Defendant Prasad's guaranty agreement, he agreed to "advance credit to <u>Hadaf Inc. (Tarun Maitra)</u> (hereinafter cited 'Debtor')." (ECF No. 700-9.) On Defendant Maitra's guaranty agreement, the debtor is listed as "Hadaf Inc." without reference to himself as the debtor. (ECF No. 700-8.)

BP has not addressed the issue of whether there is adequate legal separation between guarantor Tarun Maitra and debtor Hadaf Inc. or whether Defendant Maitra's guaranty is a sham. "That the names 'on the dotted line' are different on the promissory note and trust deed, on the one hand, and on the guarantee agreement, on the other hand, is not enough to qualify" the guaranty as valid since "the supposed guarantors against whom suit has been brought [could be] nothing more than principal obligors under another name." *River Bank Am.*, 38 Cal. App. 4th at 1420 (internal citations and quotation marks omitted). Given the evidence before the Court, the Court finds there is a question of fact as to whether Tarun Maitra is Hadaf Inc. under another name. The Court therefore **DENIES** BP's claim for relief as to Guarantor Defendant Tarun Maitra.

*3. The Other Guarantor Defendants*

In its supplemental brief, BP provided that a guarantee is valid "where its terms are unambiguous, it is in writing, and it is signed by the guarantor." (*Id.* at 2 (citing *Indymac*

*Bank, F.S.B v. Aryana/Olive Grove Land Develop., LLC*, No. 12-01494 VAP (DTBx), 2013 WL 12129624, at *6 (C.D. Cal. Sept. 4, 2013). Yet the court in *Indymac* goes on to note a contract is valid if there is consideration, stating when a guaranty is made coincidentally with the promissory note, the guaranty is supported by the same consideration as the note and is enforceable. 2013 WL 12129624, at *6 (citing *Rancho Santa Fe Pharm. Inc. v. Seyfert*, 219 Cal. App. 3d 875, 878 (Ct. App. 1990). For some reason, BP does not address the issue of consideration in its supplemental brief. The Court there analyzes the guaranties with the information provided.

These guaranties were signed by the Guarantor Defendants, in writing, and contained clear terms.[9] The issue is whether each guaranty is supported by consideration. Because the date the agreements are entered into is important in this analysis, the Court compiled the following chart for the remaining Guarantor Defendants:

| Franchisee | Date Agreement Executed | ECF No. | Guarantor | Date Guaranty Executed | ECF Nos. |
|---|---|---|---|---|---|
| Khaja Ansari | 12-30-08; 12-19-08; 10-22-10[10] | 685-46 | Fazilath Ansari | 3-31-06 | 685-51; 700-3 |
| NP Petroleum Corp | 6-15-10 | 685-47 | Payam Sahih | 10-12-08; 6-7-10 | 685-53; 700-5 |
| Daisie Enterprises, Inc. | 5-31-11; 5-24-11 | 685-49 | Anup Patel | 5-26-11 | 685-55; 700-7 |
| Hadaf, Inc. | 11-12-08; 11-3-08 | 685-50 | Soma Prasad | 12-20-07 | 584-57; 700-9 |

As to <u>Fazilath Ansari</u>, it is unclear why Fazilath Ansari would execute a guaranty in 2006 when the debtor, Khaja Ansari, did not execute his agreement until 2008 at the

---

[9] In their supplemental brief, Defendants argue the language in the agreements is "overbroad an uncertain." (Def. Supp. Brief 3.) The Court disagrees, as a reading of the agreements discloses that they are neither vague nor uncertain.

[10] It is unclear why there are signatures on dates almost two years apart; perhaps the second document was a supplement, but both documents are included as "Exhibit A" to the Request for Admission, requesting "Admit that Exhibit A attached hereto is a true and correct copy of the FRANCHISE AGREEMENT that YOU executed." But this variation is not important to the Court's analysis below.

14

earliest. BP has provided no information as to this time discrepancy. BP also has provided no information as to why consideration is sufficient; thus, BP has not met its burden of showing a genuine issue of material fact. The Court finds BP has not met its burden of proving the validity of Fazilath Ansari's guaranty agreement. The Court **DENIES** BP's Motion for Summary Judgment on its Fifth Claim for Relief against Defendant Fazilath Ansari.

As to Payam Sahih, the first guaranty agreement for this Defendant that BP produced to the Court was signed in 2008, almost two years before the debtor's agreement. BP then produced a second guaranty agreement signed in 2010, without explanation as to the date change. (ECF No. 700-5). Because this guaranty agreement was executed at around the same time as the debtor agreement, the Court finds consideration is sufficient. The same result inures for Anup Patel, who signed the guaranty agreement coincidentally with his respective debtor. The Court finds consideration is sufficient as to both of these Defendants.

As to Soma Prasad, it is unclear why Defendant Prasad executed the guaranty almost a year before her respective debtor executed its franchise agreement. Again, BP has provided no information as to this discrepancy and therefore has not met its burden of showing no genuine issue of material fact as to the validity of this agreement. The Court **DENIES** BP's Motion for Summary Judgment on its Fifth Claim for Relief against Defendant Soma Prasad.

Accordingly, the Court finds BP has met its initial burden as to this element of the breach of guaranty claim for Guarantor Defendants Payam Sahih and Anup Patel. These Guaranty Defendants have produced no evidence that calls the validity of the guaranties into question.

### B. *Borrower Default*

BP alleges the debt owed to BP by the Dealer Defendants for motor fuel remains outstanding. (MSJ 6; *see supra* Sections I.B & C.) As noted above, there is no genuine issue of material fact that the Dealer Defendants were required to pay for the motor fuel

15

and have not done so. Thus, the Court has already found the Dealer Defendants defaulted. The Court finds there is no material dispute of fact regarding this element.

### C. *Guarantor Failure to Perform*

BP alleges the Guarantor Defendants failed to pay the respective amounts owed for motor fuel. (MSJ 8.) Each guaranty required the guarantor to pay the amount owed by the debtor. (*See e.g.*, ECF No. 685-52, at 7 (Unconditional Guaranty: "The undersigned . . . hereby irrevocably, fully and unconditionally guaranties to BP the full and prompt performance and payment when due, whether by acceleration or otherwise, of any and all of the obligations of Debtor owed to BP . . . ."; ECF No. 685-51, at 7 (Guarantee Agreement Individual: "The undersigned . . . [advances] credit to [Debtor] and . . . [agrees] to any additional credit at any time hereafter to Debtor for petroleum products and other merchandise, or. . . to extend credit, advance money . . . of any money due or to become due under contract or obligation arising from any lease or loan . . . .").)

The Court has already found there is no material dispute of fact that the Dealer Defendants have failed to pay money due under their contracts. The Court finds BP's papers are sufficient to show the Guarantor Defendants have agreed to pay the Dealer Defendants' outstanding balance and that the Guarantor Defendants have not paid. Defendants have produced no controverting evidence showing the Guaranty Defendants have paid. Thus, the Court finds there is no material dispute of fact as to this element.

### D. *Conclusion*

In sum, there is no dispute of material fact that BP and Guarantor Defendants Payam Sahih and Anup Patel entered into valid guaranty agreements, the borrower defaulted, and these Guaranty Defendants failed to perform.[11] Thus, the Court **GRANTS** BP's Fifth

---

[11] Other district courts in this state have analyzed a fourth element to a breach of guaranty claim—notification of default. In *Indymac Bank*, the court noted:
> In *Torrey Pines Bank v. Superior Court*, the California Court of Appeal identified an additional element to a breach of guaranty claim not referenced in the *Grayl CPB, LLC* case, *i.e.*, "the lender notified the defendant of the default." 216 Cal. App. 3d at 819. The *Grayl CPB, LLC* decision is a Court of Appeal decision as is *Torrey Pines Bank*; the *Grayl*

16

12-CV-665 JLS (JLB) Lead Case

Claim for Relief in its Fifth Amended and Consolidated Complaint against Payam Sahih and Anup Patel. The Court **DENIES** BP's Fifth Claim for Relief against Khaja Ansari, Fazilath Ansari, Tarun Maitra, and Soma Prasad.

### III. Failure to File an Answer to Fifth Amended Complaint

BP argues that because certain Defendants have failed to file an answer to BP's Fifth Amended and Consolidated Complaint, BP's claims should be deemed admitted. (MSJ 9.) BP's Complaint was deemed filed on May 2, 2014. (*See* ECF No. 300.) Notably, Khaja Ansari, NP Petroleum, Sharina Alloush, Daisie Enterprises, and Hadaf Inc. have failed to file an Answer. (*See* ECF Nos. 302–05, 309-1 (answers filed by various other Defendants).)

A defendant must serve an answer within 21 days after being served with the summons and complaint an allegation "is admitted if a responsible pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6); *see also Lockwood v. Wolf Corp.*, 629 F.2d 603, 611 (9th Cir. 1980) (finding the defendant's failure to deny an allegation in its answer to the plaintiff's complaint constituted an admission and, as a result, no evidence on this element of the bankruptcy case was required).

---

> *CPB, LLC* decision does not overrule nor call into question the recitation in the *Torrey Pines Bank* decision of four elements to a breach of guaranty claim under California law. Accordingly, the Court will consider the additional element announced in *Torrey Pines Bank* when evaluating Plaintiff['s] breach of guaranty claim.

2013 WL 12129624, at *6 n.7; *see also Allied Irish Banks, P.L.C. v. R2D2, L.L.C.*, No. CV 08-8527 RSWL (FMOx), 2009 WL 10671184, at *3 (C.D. Cal. Mar. 11, 2009) (citing *Torrey Pines* to list the elements of a breach of guaranty, including notification of default). Under California Civil Code section 2807, "[a] surety who has assumed liability for payment or performance is liable to the creditor immediately upon the default of the principal, and without demand or notice." *See also* Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2017) ¶ 6:3436 ("[I]f the bond is silent, the obligee is not required to give the surety notice of the principal's default or make demand upon the surety for payment.").

There are two forms of guaranties in this matter. The Unconditional Guaranties specifically include a waiver of notice of non-performance or nonpayment. (*See, e.g.*, ECF No. 685-52, at 7.) The guarantees titled "Guarantee Agreement Individual" are silent as to notice. (*See, e.g.* ECF No. 685-51, at 7.) Therefore, the Court finds it need not evaluate this element of "notification" in its summary judgment analysis.

17

Given the Court's above conclusions granting the majority of BP's Motion for Summary Judgment, the Court need not address this issue regarding deemed admissions as to the majority of the Defendants. The only portion of BP's Motion that the Court denies in this Order relates to the validity of the guaranty agreements by Defendants Khaja Ansari, Fazilath Ansari, Tarun Maitra, and Soma Prasad. Although Defendant Khaja Ansari did not file an answer, the Fifth Amended Complaint does not assert that Khaja Ansari entered into a <u>valid</u> guaranty agreement, which is the issue here. (*See* Fifth Am. Compl. ¶ 38 (alleging Khaja Ansari executed a guaranty thereby personally guaranteeing the obligations of Khaja Ansari's franchise agreement).) Even if the Court were to evaluate whether Defendant Ansari admitted the allegations against him, this would have no bearing on the issue presented in BP's Motion. Therefore, the Court need not evaluate whether BP's claims are deemed admitted here. Thus, the Court **DENIES AS MOOT** this portion of BP's Motion for Summary Judgment.[12]

## CONCLUSION

The Court **GRANTS** BP's Motion for Summary Judgment as to BP's Third Claim for Relief in its Fifth Amended and Consolidated Complaint against Defendants Khaja Ansari, NP Petroleum Corp., Sharina Alloush, Daisie Enterprises, Inc., and Hadaf Inc. for damages resulting from breach of franchise agreements for the failure to pay for motor fuel. The Court **GRANTS** BP's Motion for Summary Judgment as to BP's Fifth Claim for Relief as to Guarantor Defendants Payam Sahih and Anup Patel for breach of franchise

---

[12] Ms. Lacey also declares "[a]ffirmative defenses were raised by Defendants' Answer to the Complaint, including estoppel and unclean hands theories, which are clearly applicable here." (Lacey Decl. ¶ 5.) These affirmative defenses was pled by some Defendants, (*see* ECF No. 303, at ¶¶ 180, 183), but affirmative defenses without any explanation or supporting facts do not create a genuine issue of material fact. *See British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("[L]egal memoranda and oral argument are not evidence, and they cannot themselves create a factual dispute sufficient to defeat summary judgment."); *La Reunion Francaise, S.A. v. Barran*, No. CV 96-8533 DT (VAPX), 1998 WL 776685, at *3 n.2 (C.D. Cal. May 11, 1998) ("If affirmative defenses always required trial, defendants could always defeat summary judgment by simply pleading an affirmative defense."). Similarly, Ms. Lacey's argument that BP is not cooperating with "good faith and fair dealing implicit in every contract" does not create an issue of material fact as to the Defendants' breach of the contracts.

guarantees for the failure to pay the amounts owed for motor fuel. The Court **DENIES** BP's Motion for Summary Judgment as to BP's Fifth Claim for Relief as to Guarantor Defendant Khaja Ansari and Soma Prasad. The Court enters judgment as follows.

### I. Judgment

"Under California law, the liability on a promissory note . . . is joint and several on the part of the principal and the guarantor; the plaintiff is not entitled to a double recovery." *Ascendiant Cap. Grp. v. Smith*, 403 Fed. App'x 256, 257 (9th Cir. 2010) (citing Cal. Civ. Code § 2807). As noted above, the Court has already entered judgment against Defendants Nader Sahih and Rajesh Arora, (ECF No. 699). Because these Defendants are jointly and severally liable with other Defendants as relevant to this Motion, the Court includes them here. The Court enters judgment as follows. These judgments **SHALL** be offset by any credits to which the Defendants are legally entitled. (*See* MSJ 7 n.2.)

1. Khaja Ansari is liable in the amount of $166,971.81;
2. NP Petroleum Corp., Nader Sahih, and Payam Sahih are jointly and severally liable in the amount of $71,574.81;
3. Sharina Alloush is liable in the amount of $205,288.88;
4. Daisie Enterprises Inc., Rajesh Arora, and Anup Patel are jointly and severally liable in the amount of $34,398.71;
5. Hadaf, Inc. is liable in the amount of $34,398.71.

**IT IS SO ORDERED.**

Dated: January 2, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge